**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**


**DEWAYNE E. VEST**                                                                    **PLAINTIFF**


**VS.**                                    **CASE NO. 3:17CV00164 PSH**


**NANCY A. BERRYHILL, Acting Commissioner,**
      **Social Security Administration**                                          **DEFENDANT**


**ORDER**

Plaintiff Dewayne E. Vest ("Vest"), in his appeal of the final decision of the Commissioner

of the Social Security Administration (defendant "Berryhill") to deny his claim for Disability

Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law

Judge ("ALJ") erred: (1) in failing to find that he met Listing 11.03 for epilepsy, and in failing to

develop the record regarding the listing; and (2) in determining his residual functional capacity

("RFC").  The parties have ably summarized the medical records and the testimony given at the

administrative hearing conducted on June 16, 2016.  (Tr. 33-66).  The Court has carefully reviewed

the record to determine whether there is substantial evidence in the administrative record to support

Berryhill's decision.  42 U.S.C. § 405(g).  The relevant period for purposes of Vest's disability

determination is from March 19, 2015, through August 10, 2016, the date of the ALJ's decision in

this proceeding.  The period before March 19, 2015, was adjudicated in a prior decision.  (Tr. 69-

78).

1

*Administrative Hearing:*

At the June 2016 administrative hearing, Vest testified that he was 51 years old with a high school education. He stated he was 6'1" and weighed 240 pounds. He confirmed that he last worked on July 29, 2013, when he experienced an overdose of the prescription medication Dilantin. According to Vest, the effects of this incident continue despite his Dilantin levels having returned to normal. The effects include slowed speech, motion and walk. Vest described dealing with seizures throughout his life, and stated he had 3-4 seizures in the week or two preceding the hearing. He described the current seizures as *petit mal*, with a duration of a few minutes during which he goes blank, his eyes go blank, and his memory "goes out." (Tr. 40). Vest testified that his worst seizure, occurring in 2010, was a *grand mal* seizure lasting 2-3 hours. Vest indicated his doctors do not know why he continues to have seizures. He now takes Neurontin for seizures and pain, and stated he was allergic to Dilantin. Vest also noted he has back problems, which worsened after the July 29, 2013 occurrence. He also stated he suffered from arthritis in his hands, restless legs, thyroid problems, depression, headaches, and fatigue. Vest said the fatigue requires him to take it easy for 3-4 hours a day. He conceded that medications were effective in treating his restless legs and depression, and he treats the headaches with over the counter medications.

Vest described his daily activities to include some yard work, perhaps going to town, watching television, and folding clothes. Although he has a driver's license, Vest stated he did not drive. When going to town or going shopping, his partner drove. The yard work Vest described was a 30-45 minute period of pulling weeds and trimming hedges, although he was careful not to get overheated and felt he could do the outside work only when temperatures were in the 80's or lower and humidity was low.

Vest stated he was being treated by his primary care physician, and had not been to a neurologist or had tests, such as an EEG, in the previous year or so. According to Vest, his primary care physician had not recommended he see a specialist. (Tr. 38-51).

John Walls ("Walls"), Vest's partner, testified to last seeing Vest have a seizure four days prior to the hearing. The seizure, according to Walls, lasted less than two minutes. According to Walls, it is difficult to identify when Vest is having a seizure "unless you're having a conversation with him or he tips over." (Tr. 53). Walls described numerous changes in Vest since the July 29, 2013, incident, stating Vest was "always a go-getter and now he's a do-nothinger." (Tr. 55). Walls stated Vest's seizures seemed controlled before July 29, 2013, increasing thereafter. Walls cited finances as the reason Vest had not seen a neurologist or been tested. (Tr. 52-59).

A vocational expert, Dianne Smith ("Smith"), testified that Vest's past relevant work as a janitor or stocker was medium work. The ALJ posed a hypothetical question to Smith, asking her to assume a worker of Vest's age and educational and work background who could perform light work with numerous restrictions.[1] Smith identified the jobs of basic stamper and marking clerk as examples of jobs that such a worker could perform. (Tr. 63-64). A second hypothetical question was posed, asking Smith if jobs would be available if the worker was off task twenty percent of the workday and missed up to three days a month on an unscheduled basis. Smith indicated no jobs were available for such a worker. (Tr. 64).

---

[1] The restrictions were: worker should take seizure precautions and not work around any hazards, such as unprotected heights or dangerous moving machinery; should not be required to drive or operate heavy equipment; and should perform simple, routine tasks with incidental contact with the general public. (Tr. 63).

*ALJ's Decision:*

The ALJ, in his August 2016 decision, found Vest had the following severe impairments: seizure disorder, thyroid disorder, restless leg syndrome, obesity, and depression. He found the impairments, either singly or in combination, did not meet any of the listed impairments in 20 C.F.R Part 404. Specifically, the ALJ considered listings 1.02, 9.00, 11.02, 11.03, and 12.04. In addressing Listing 12.04, the ALJ analyzed the "paragraph B" factors, finding Vest had mild limitations in activities of daily living, moderate difficulties in social functioning and with regard to concentration, persistence, or pace, and that he had experienced no episodes of decompensation. The ALJ determined Vest had the RFC for light work with restrictions which mirrored those posed to Smith at the administrative hearing. The ALJ thoroughly reviewed the objective medical evidence, including the consultative physical examination performed by Dr. Robert Troxel ("Troxel") in July 2015 and the August 2015 consultative psychiatric assessment by Dr. Samuel Hester ("Hester"). The ALJ assigned "some weight" to Troxel's findings[2] and assigned "great weight" to Hester's findings.[3] Although the ALJ addressed the other impairments alleged by Vest, such as obesity, thyroid disorder, depression, and restless leg syndrome, the primary focus of the

---

[2]

Troxel's examination yielded normal results on Vest's range of motion, along with a finding that Vest was unable to squat/arise from a squatting position, and he was unable to walk on heel and toes. Troxel opined Vest had mild to moderate limitations in his ability to walk, stand, lift and carry. (Tr. 479-483).

[3]

Hester diagnosed Vest with depressive disorder, NOS, adjustment disorder with anxious mood, seizure disorder, hypothyroidism, restless leg syndrome, and insomnia. With respect to Vest's adaptive functioning ability, Hester opined that Vest was capable of communicating and interacting in a socially adequate manner, coping with the mental demands of basic work tasks, and able to sustain persistence in completing tasks, although he may not be able to complete work tasks within an acceptable timeframe due reported weakness. (Tr. 484-491).

ALJ was Vest's seizure disorder. This was warranted, as Vest's testimony at the hearing emphasized the seizures to a greater degree than other impairments. The ALJ summed up his discussion of Vest's seizure disorder:

> In sum, the record shows that despite the claimant's reported seizure activity, the objective medical evidence shows grossly normal clinical examination findings in neurological, musculoskeletal and speech. Furthermore, no subsequent evidence other than medication maintenance progress notes, have been submitted since the prior ALJ Decision [on March 18, 2015], which would alter the range of light residual functional capacity of the claimant as set forth above. Finally, the claimant's primary care physician is not recommending any aggressive treatment or referrals to neurology consultations as the claimant is reporting he is doing well on the current medication regimen. Accordingly, the claimant remains capable of a range of light exertion with additional environmental limitations to account for his severe physical impairments, including his seizure disorder.

(Tr. 22). Relying on the testimony of Smith, the ALJ found Vest was not disabled.

**Claim #1: The ALJ erred in failing to find that Vest met Listing 11.03 for epilepsy, and erred in failing to develop the record regarding the listing.**

Vest alleges the ALJ erred at Step two, as he alleges he met Listing 11.03, which requires:

> Epilepsy – nonconvulsive epilepsy (petit mal, psychomotor, or focal) documented by detailed description of a typical seizure pattern, including all association phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

Vest argues the ALJ failed to analyze whether he met this Listing. We disagree, as the ALJ specifically found Vest did not meet the Listing "because he does not have seizures occurring more frequently than once weekly in spite of at least three months of prescribed treatment." (Tr. 17). Vest counters this by citing his testimony, his answers to a Seizure Questionnaire dated June 24, 2016, and the testimony of Walls, Vest's partner. The flaw in this argument is reliance upon testimony and questionnaire answers. At Step two, subjective assertions do not suffice to satisfy a Listing.

Instead, *medical evidence* must be adduced to meet the criteria of the Listing. *Roberson v. Astrue*, 481 F.3d 1020 (8th Cir. 2007); 20 C.F.R. §§ 404.1529(d)(3), 416.929(d)(3). In the absence of medical evidence regarding the frequency and intensity of the seizures, there is substantial evidence supporting the ALJ's conclusion that Vest did not meet Listing 11.03.

Vest also argues the ALJ should have further developed the record on this issue. Specifically, Vest alleges the ALJ should have contacted Dr. Gothwal ("Gothwal"),[4] the most recent physician to treat him.[5] While Vest is correct that an administrative hearing is not an adversarial proceeding, it does not follow that the ALJ erred in ruling on the record before him. Vest fails to demonstrate how the record was inadequate and how additional reports would cure the inadequacy. The objective medical evidence in this case, including both a physical and mental consultative examination, was ample and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient). Under these circumstances, we find no error in the ALJ's reliance upon the record before him.

**Claim #2: The ALJ erred in determining Vest's RFC.**

Turning to Vest's claim of error in his RFC determination, we initially note that the RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one

---

[4]

Records from Gothwal show that Vest saw him on at least six occasions during the relevant period. (Tr. 494-520). Vest typically received treatment for back problems from Gothwal, who reported after Vest's last visit in August 2016 that the lower backache "is resolved." (Tr. 520).

[5]

Although Walls testified that Vest did not pursue treatment due to inadequate finances, there was no evidence of any effort to obtain treatment from charitable organizations, and the record reflects Vest sought and received treatment during the relevant period for other impairments (e.g., back pain) and was able to purchase prescribed medications.

physician and adopt his/her findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Vest argues that the physical limitations as determined by Troxel must control as he was the only physician to opine to Vest's limitations during the relevant period. Although Troxel offered his opinion that Vest had mild to moderate limitations in his ability to walk, stand, lift, or carry, it does not follow that all other medical records generated during the relevant period must be ignored. Records from treating physician Gothwal show Vest to have full range of motion, normal strength, normal gait and stance, and normal ability to heel/toe walk in November 2015. (Tr. 496). These unremarkable findings were repeated during subsequent examinations by Gothwal, including the final visit in June 2016 when the back ache was deemed resolved. (Tr. 519). The ALJ correctly considered all of the medical evidence, as well as Vest's credibility,[6] in arriving at his RFC determination, which found Vest could perform light work with numerous limitations. Substantial evidence supports the ALJ's decision.

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

---

[6] Vest's argument that the credibility assessment of the ALJ was erroneous due to his failure to mention Vest's work record is without merit. The ALJ was not required to address every possible factor in considering Vest's credibility. *Strongson v. Barnhart*, 361 F.2d 1066 (8th Cir. 2004). Here, the ALJ discounted Vest's subjective complaints for good reasons, including the inconsistency of the subjective complaints when compared with the medical evidence and other evidence of record.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Vest's complaint is dismissed with prejudice.

IT IS SO ORDERED this 29th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE